**Charles Ben HOWELL,
Petitioner-Appellant,**

v.

**Clarence JONES, Sheriff,
Respondent-Appellee.**

No. 74–2292.

United States Court of Appeals,
Fifth Circuit.

July 16, 1975.

Rehearing and Rehearing En Banc
Denied Oct. 6, 1975.

H. Averil Sweitzer, Dallas, Tex., Howard D. Pattison, Athens, Tex., Marvin Collins, Fort Worth, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Austin, Tex., John B. Tolle, John H. Hagler, Asst. Dist. Attys., Dallas, Tex., for respondent-appellee.

Before GOLDBERG and RONEY, Circuit Judges, and GROOMS, District Judge.

RONEY, Circuit Judge:

Charles Ben Howell, a Texas lawyer, appeals the denial of habeas corpus relief from two convictions for contempt in Texas state courts. The first contempt citation resulted when Howell, as an attorney, failed to make a disclosure to the court of collateral legal proceedings concerning a divorce case he was handling, even when directly questioned by a state court judge. The second contempt conviction came during the hearing on the first contempt charge when, as a witness, Howell refused to answer a question on cross-examination, even when ordered by the trial judge to do so. The rather lengthy fact situation giving rise to the contempt convictions is set out in the opinion of the Texas Court of Criminal Appeals. Ex parte Howell, 488 S.W.2d 123 (1972). Finding no merit to either the constitutional attack against the Texas contempt statute, or the due process attack on the contempt proceedings themselves, we affirm.

In lengthy briefs Howell raises eighteen points of error, including an attack on the constitutionality of the Texas contempt statute under which he was convicted. We find that the various points as to the constitutionality of the contempt statute have been disposed of previously by the United States Supreme Court in dismissing Howell's direct appeal from his convictions "for want of a substantial federal question." Howell v. Jones, 414 U.S. 803, 94 S.Ct. 114, 38 L.Ed.2d 38 (1973). As to the other challenges to his convictions, Howell fails to demonstrate any error of federal constitutional magnitude which is necessary for habeas corpus relief. See 28 U.S. C.A. § 2254(a).

Howell was employed by a woman to represent her in divorce and child custody proceedings. He sought a default judgment because of the husband's failure to file an answer. When questioned as to why there had been no answer filed and whether he had been in contact with the husband or his attorney, Howell neglected to tell the domestic relations court judge that there was a related child custody case pending between the same parties in a neighboring court, that he had appeared with the husband's attorney just two days before in that court, and that a child custody hearing had there been scheduled. The judge entered a default judgment in favor of the wife, including an award to her of custody of the minor children. Later, upon learning the true facts, the judge set aside the default and cited Howell for contempt.

The contempt citation was heard and adjudicated by another judge pursuant to the provisions of Vernon's Ann.Tex. Rev.Civ.Stat. art. 1911a, § 2(c). Before the second judge, Howell testified in his own behalf in support of a motion for continuance of the contempt hearing, stating that he had been unable to retain qualified counsel, even though he had talked with at least four lawyers, each of whom had declined to represent him. On cross-examination he was asked to name the four lawyers he had sought to assist him. He declined to do this. He claimed that his refusal to answer the question was justified under the attorney-client privilege and because he did not want to expose the attorneys he had contacted and involve them, in violation of a professional confidence.

After some colloquy in which Howell said, " . . . I have withdrawn the matter," the Court said:

THE COURT: Mr. Howell, you give this court no alternative but to hold you in contempt of court for refusing to answer the question . . .

and

THE COURT: If you do not answer that question, I am going to hold you in contempt of court on this hearing.

For his failure to answer, Howell was immediately held in direct contempt of court, fined $500, and sentenced to thirty days confinement in the county jail. At the end of the hearing, Howell was found guilty of contempt for his conduct at the default judgment proceeding, fined $100, and sentenced to three days in county jail on that citation.

■ In addition to the two criminal contempt convictions, Howell was ordered to "be confined in the Dallas County Jail until such time as he shall purge himself by revealing the names of the said four attorneys." The contempt proceedings having terminated, Howell cannot be confined under this order since he has no further opportunity to purge himself of contempt. *See* Shillitani v. United States, 384 U.S. 364, 371, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).

## I.

Howell's challenges to the constitutionality of the new Texas contempt statute, Tex.Rev.Civ.Stat. art. 1911a, can be disposed of in short order, as they have already been presented to and rejected by the United States Supreme Court. Since Howell's case involved the constitutionality of a state statute the validity of which had been upheld by the Texas courts, he was authorized by 28 U.S.C.A. § 1257(2) to appeal his conviction directly to the Supreme Court. The term "appeal," as it is used with regard to the jurisdiction of the Supreme Court, denotes the right of a litigant to invoke the obligatory jurisdiction of the Court, *i. e.,* if a case is a proper one for appeal the Court must hear it. On the other hand, certiorari, the more common method of seeking Supreme Court review, invokes the Court's discretionary or permissive jurisdiction. 7B Moore's Federal Practice ¶[81–1] (2d ed. 1974). The Supreme Court dismissed Howell's appeal from the state court judgment "for want of a substantial federal question." Howell v. Jones, 414 U.S. 803, 94 S.Ct. 114, 38 L.Ed.2d 38 (1973).

■ In considering the effect of such a disposition, Justice Brennan has noted that "[v]otes to affirm summarily, and to dismiss for want of a substantial federal question, it hardly needs comment, are votes on the merits of a case . . . ." Ohio ex rel. Eaton v. Price, 360 U.S. 246, 247, 79 S.Ct. 978, 979, 3 L.Ed.2d 1200 (1959). Likewise, our Court has recently stated that dismissal for want of a substantial federal question by the Supreme Court is a judgment of affirmance on the merits of the issues presented by a petitioner in his jurisdictional statement. Wright v. City of Jackson, 506 F.2d 900, 902 (5th Cir. 1975). *Accord,* Ahern v. Murphy, 457 F.2d 363, 364 (7th Cir. 1972); Stern & Gressman, Supreme Court Practice 197 (4th ed. 1969); C. Wright, Law of Federal Courts 495 (2d ed. 1970).

In a § 2254 habeas corpus proceeding, a prior judgment of the Supreme Court of the United States is "conclusive as to all issues of fact or law with respect to an asserted denial of a Federal right which constitutes ground for discharge in a habeas corpus proceeding, actually adjudicated by the Supreme Court . . . ." 28 U.S.C.A. § 2244(c). Howell argues that a dismissal of an appeal to the Supreme Court for want of a substantial federal question is not an "actual adjudication" as required by § 2244(c), but is more in the nature of a denial of certiorari. There is, however, a clearly recognized distinction between the effects of a dismissal for want of a substantial federal question and a denial of certiorari.

■ A denial of certiorari imports nothing as to the merits of the case. All it means is that, for whatever reasons, there were not four members of the Court who wished to consider the issues presented for review. Brown v. Allen, 344 U.S. 443, 489–497, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (opinion of Frankfurter, J.); Maryland v. Baltimore Radio Show, Inc., 338 U.S. 912 (1950) (opinion of Frankfurter, J.); C. Wright, Law of Federal Courts, 495 (2d ed. 1970). Summary disposition of an appeal, however, either by affirmance or by dismissing for want of a substantial federal question, is a disposition on the merits. Ohio ex rel. Eaton v. Price, *supra* ; Wright v. City of Jackson, *supra.* Thus, there is a sharp contrast between appealing from a state court's holding a state statute constitutional, and seeking review of other constitutional issues, not involving the constitutional validity of a state statute.

Such "non-statutory" constitutional questions may be reviewed only by virtue of writ of certiorari, the denial of which has no dispositive significance.

■ Although the effect of a summary disposition in terms of stare decisis principles may be arguable, a dismissal for want of a substantial federal question unquestionably settles the issues presented as between the parties and is an actual adjudication within the meaning of § 2244(c). Fusari v. Steinberg, 419 U.S. 379, 391–392, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975) (Burger, C. J., concurring); Edelman v. Jordan, 415 U.S. 651, 671, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Rios v. Dillman, 499 F.2d 329, 334 n.8 (5th Cir. 1974); Doe v. Hodgson, 478 F.2d 536, 539 (2d Cir.), cert. denied, 414 U.S. 1096, 94 S.Ct. 732, 38 L.Ed.2d 555 (1973), on application for permission to present motion under F.R.Civ.P. 60(b)(6), 500 F.2d 1206, 1207 (2d Cir. 1974).

■ Howell also contends that in ordinary legal parlance, an issue has not been "actually adjudicated" by an appellate court unless that court holds a plenary hearing and delivers an opinion setting forth its thinking with respect to the issue. This argument is obviously fallacious, as evidenced by this Circuit's practice under Local Rule 21. This rule allows us to dispose of approximately one-third of our caseload without oral argument and without written opinion. These cases are, nevertheless, fully and actually adjudicated and our decision is an affirmance on the merits of the issues raised on appeal. Thus it is in the Supreme Court. "An unexplicated summary affirmance settles the issues for the parties." Fusari v. Steinberg, 419 U.S. 379, 391–392, 95 S.Ct. 533, 541, 42 L.Ed.2d 521 (1975) (Burger, C. J., concurring). The same rule necessarily applies to a summary dismissal for want of a substantial federal question.

Howell sought Supreme Court review by appeal on the question of the constitutional validity of the Texas statute. The summary disposition of that appeal concludes the matter and he cannot relitigate the issues in this Court.

## II.

Howell has inundated the Court with "authority" in support of his various contentions that his convictions were procedurally deficient. Most of the authority, however, consists of dicta and language in opinions, the facts of which differ significantly from the circumstances of this case. Nothing can be gained by a point by point analysis of the arguments and authorities extensively briefed and argued in this case. We have carefully examined them, individually and collectively, and find no error which rises to the constitutional level required for habeas corpus relief. See 28 U.S.C.A. § 2254(a).

■ Several of Howell's arguments assert essential unfairness of the proceedings on the first contempt citation. For instance, he complains that because of ex parte communications between the judge who originally cited him for contempt and the judge who eventually tried him on this charge, he was denied a trial by an impartial tribunal. Before the hearing, the two judges did meet to discuss the effects of the new contempt statute on Howell's case. In addition, the citing judge prepared a memorandum for the trial judge further analyzing article 1911a. These communications, however, involved trial procedure and there is no evidence that they had any effect on the trial judge's determination of the merits of the case. The legal determination that Howell's conduct was contemptuous appears only to have been made from information learned at the hearing. See United States v. Grinnell Corp., 384 U.S. 563, 580–583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).

The leading cases cited by Howell, Ward v. Village of Monroeville, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), are different from the case sub judice. They involved situations where there was actually some incentive to find one way or the other, i. e., financial con-

siderations (*Ward & Tumey*) or previous participation by the trying judge in the proceedings at which the contempt occurred (*Murchison*). In this case, no such incentive is evident, and the record does not otherwise support Howell's contention that he was denied a trial by an impartial tribunal.

 Howell asserts that he was denied adequate cross-examination of the citing judge. During cross-examination of this witness, Howell was restricted in his attempt to show that the contempt citation was motivated by bias and prejudice resulting from Howell's allegations that the judge had improperly caused the alteration of documents filed in support of a motion to set aside the default. A review of the record reveals that the line of inquiry did not go to the veracity of the witness's testimony concerning the events for which Howell was found in contempt. Howell does not question that the events took place. He does argue that they do not reflect contumaciousness. The cross-examination to show bias and prejudice which motivated the contempt citation, was not material to the issue of whether Howell's conduct was acutally contumacious. Under these circumstances, any error that may have been committed in restricting cross-examination does not rise to constitutional proportions so as to warrant habeas corpus relief. *Cf.* Sinclair v. Turner, 447 F.2d 1158 (10th Cir. 1971), cert. denied, 405 U.S. 1048, 92 S.Ct. 1329, 31 L.Ed.2d 590 (1972).

 The remainder of Howell's arguments relate to his contempt conviction for failure to give the names of the attorneys he said he contacted to handle his case. He claims that the identity of the consulted attorneys was constitutionally protected and that the order that he supply the information intruded upon his rights of privacy, freedom of association, and assistance of counsel. The great weight of authority, however, refuses to extend the attorney-client privilege to the fact of consultation or employment, including the component facts of the identity of the client and the lawyer. 8

Wigmore, Evidence § 2313 (MacNaughton Rev. 1961); McCormick Evidence § 90 (2d ed. 1972); 16 A.L.R.3d 1047 (1967). Although no Texas case directly in point has been cited to us, this Court has previously held that the identity of a consulted attorney is not privileged and can be the subject of judicial inquiry. Goddard v. United States, 131 F.2d 220 (5th Cir. 1942).

 The cases relied upon by Howell in support of his contention that the identity of the consulted attorneys was constitutionally protected generally involved situations in which the inquiry transcended any legitimate interest of the questioner in the solicited information and was not shown to be material to the official purpose of the investigation or proceeding at hand. *See, e. g.,* Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957). Here, however, Howell had renewed his motion for continuance and had attempted to support the motion by testifying that, despite contacting four lawyers, he had been unable to secure legal assistance. In light of this motion, the prosecution was certainly entitled to verify and further develop Howell's testimony. Even though Howell attempted to withdraw this ground for his motion, the inquiry was relevant and material to possible claims of ineffective assistance of counsel. The court was entitled to an answer to the question and was not constitutionally precluded from citing petitioner for contempt when he refused to respond.

 After citing Howell for contempt for failure to identify the attorneys he contacted, the trial judge immediately imposed sentence, without sending the citation to another judge for review. Howell claims that this summary procedure violated his constitutional due process rights. The Supreme Court has on two occasions recently addressed the question of when contemptuous conduct may be summarily punished by the judge before whom the contempt took place. In United States v. Wilson, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975) (# 73–1162), two witnesses, in

disobedience of court orders, refused to testify at a criminal trial after receiving grants of immunity. As in this case, their refusals to answer, based on alleged constitutional privileges, were not delivered disrespectfully. Nevertheless, the district court summarily held them in contempt under F.R.Crim.P. 42(a). In upholding the contempt convictions thus imposed, the Supreme Court implicitly rejected Howell's constitutional argument that summary contempt cannot be imposed for the orderly refusal to answer questions.

Howell argues that an earlier case, Taylor v. Hayes, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), controls the case *sub judice* and requires that his second contempt conviction be set aside. The factual situation in *Hayes*, however, was much different from the factual situation in the case at bar. In *Hayes*, a state trial judge found a defense attorney guilty on nine counts of criminal contempt. Although the judge informed the attorney at the time of each incident that he was in contempt of court, no sentence was imposed until after the trial was over. During the trial the attorney was permitted to respond to most, but not all, of the charges against him. As the trial progressed, however, the judge's demeanor toward the attorney became increasingly discourteous. At the conclusion of the trial the judge refused the attorney's request to respond to the charges and, after making an acrimonious statement concerning his trial conduct, sentenced the attorney to a lengthy jail term and barred him forever from practicing before the court in which the case at issue had been tried.

Presented with this compelling factual situation, the Supreme Court held, in part: (1) that the summary procedures employed by the judge did not satisfy minimum due process of law, which required appropriate notice and an opportunity to be heard at the time contempt was adjudicated after the trial; and (2) that because of the acrimony of the confrontation between the judge and the contemnor, another judge should have tried the contempt matter.

Unlike the situation in *Hayes*, Howell, as a witness, was given express notice of the grounds for his contempt citation even before he committed the contempt, was warned of the consequences of his failure to comply with the trial judge's order, and was given ample opportunity to be heard at the time of the actual adjudication of contempt. Absent from this record is the bitterness and asperity which permeated the proceedings in Taylor v. Hayes.

Under such circumstances, Howell's summary contempt conviction was not constitutionally deficient. There is no question but that he knew precisely why he was being cited for contempt. Moreover, he had an adequate "opportunity to speak in his own behalf in the nature of a right of allocution." Groppi v. Leslie, 404 U.S. 496, 504, 92 S.Ct. 582, 587, 30 L.Ed.2d 652 (1972). Finally, and significantly, the record does not reflect that at the time of the contempt the trial judge was so "personally embroiled" with Howell that he was unable to sit impartially in judgment on the contempt charge. *See* Taylor v. Hayes, *supra*; Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). Howell's conduct did not vilify the judge. To the contrary, he was polite throughout. Neither do the judge's comments demonstrate a bias or anger against Howell. Accordingly, there was no constitutional violation in the contemned judge sitting in judgment on the contempt charge and summarily imposing sentence. *Cf.* Bell v. Hongisto, 501 F.2d 346 (9th Cir. 1974), cert. denied, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975), a recent case with closely analogous facts.

Having examined the record in this case in light of Howell's numerous contentions of error presented both in his briefs and at oral argument, and finding no error which reaches a constitutional level, we affirm the district court's denial of the writ of habeas corpus.

Affirmed.