**Donald Lee LAYER, # 153–536**

v.

**Howard N. LYLES.**

**Civ. No. K–81–2849.**

United States District Court,
D. Maryland.

Oct. 1, 1984.

E. Clinton Bamberger, Jr., Lynne A. Battaglia, Richard L. North and Karen Czapanskiy, Baltimore, Md., for plaintiff.

Stephen H. Sachs, Atty. Gen. of Md., and Stephanie J. Lane, Asst. Atty. Gen., Baltimore, Md., for defendant.

FRANK A. KAUFMAN, Chief Judge.

Layer, seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254, challenges his conviction on April 30, 1980 in the Circuit Court for Wicomico County, Maryland for robbery and use of a handgun. Judge Alfred T. Truitt, Jr., who presided during Layer's jury trial, sentenced Layer to a ten-year sentence for the robbery charge and to a five-year concurrent sentence for the handgun violation. Originally, plaintiff stated two bases for relief in this case: (1) ineffective representation by his trial counsel and (2) denial of his Fifth and Sixth Amendment rights because Judge Truitt had both prosecuted and defended Layer in prior criminal cases involving offenses unrelated to Layer's 1980 convictions, that is, they were unrelated except to the extent they constituted background factual information presumably relevant and material to the sentencing decisions made by Judge Truitt. After Layer instituted the within case, this court informed plaintiff that he had seemingly not exhausted his state remedies with regard to his ineffective-assistance-of-counsel claim, as required by *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). In response, plaintiff's counsel[1] informed this court that plaintiff desired to press his contentions immediately in this case with regard to Judge Truitt's previous prosecution and representation of him and that Layer understood "that by pursuing federal habeas relief now, he will be waiving the right to pursue any future federal habeas claim related to this case."[2] Accordingly, the sole issue herein is whether a judge is required on Fifth or Sixth Amendment grounds to disqualify himself in a case involving a defendant whom he has both prosecuted and represented prior to going on the bench.[3]

The relevant facts are not in dispute. Plaintiff was convicted of robbery in the Circuit Court for Wicomico County, Mary-

---

1. This court expresses its appreciation to E. Clinton Bamberger, Jr., Esq., Lynne A. Battaglia, Esq., Richard L. North, Esq. and Karen Czapanskiy, Esq., as members of the Clinical Law Program of the University of Maryland Law School who acted as counsel for plaintiff in this case at this court's request, and to Mr. Michael P. Bell and Mr. Glenn D. Solomon, law students, who aided Mr. Bamberger, Ms. Battaglia, Mr. North and Ms. Czapanskiy.

2. *See* Plaintiff's post-argument memorandum in support of his within petition at 1.

3. At an early stage of this habeas corpus proceeding the State maintained that under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), plaintiff is barred from seeking federal habeas corpus relief herein with regard to the issue of Judge Truitt's participation because plaintiff failed to make a timely objection at trial, *i.e.,* during the sentencing proceeding or earlier, with respect thereto. As this court noted on the record—and counsel for defendant agreed—during a hearing held in open court in February, 1984—*Wainwright* presents no bar here because the Court of Special Appeals of Maryland refused to apply such a procedural bar and reached and considered the merits of the recusal issue during defendant's appeal to that court from his conviction. A state court's decision not to apply the *Wainwright* procedural bar rule removes any impediment to substantive review by a federal court in a habeas corpus proceeding. *See County Court of Ulster County v. Allen*, 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979); *Baker v. Muncy*, 619 F.2d 327, 329 (4th Cir.1980).

land in 1966. On June 3, 1975, plaintiff was found not guilty of escape after a trial in the Circuit Court for Wicomico County, Maryland. The prosecutor in the 1966 case and the defense attorney in the 1975 case were the same person, namely, Alfred T. Truitt, Jr., who subsequently became a judge of the Circuit Court for Wicomico County and presided as the judge in plaintiff's 1980 jury trial. In the course of sentencing Layer, the following colloquy occurred between Judge Truitt and Layer:

THE COURT: Are these the only two convictions you have, '72 and '71?

THE DEFENDANT: As far as jail or something like that. Maybe an assault charge or something like that.

THE COURT: Well, the jury has decided you did it, and this is your second offense of robbery.

THE DEFENDANT: Well, yes.

THE COURT: I don't have much patience with robbery. Is there anything further you wish to tell me?

THE DEFENDANT: I would like to have the opportunity to try to rehabilitate myself.

THE COURT: Where you do work?

THE DEFENDANT: For John Hochsmouth, down in Mardela.

THE COURT: Farming. You work the crops?

THE DEFENDANT: Yes, sir.

THE COURT: You weren't working in November, I take it?

THE DEFENDANT: No, I happened to have been down in North Carolina and came back up here.

THE COURT: Where are you from? Are you from this area?

THE DEFENDANT: Right here in Salisbury.

THE COURT: I represented you in the past.

THE DEFENDANT: Yes, sir.

THE COURT: I thought I did.

All right, if there is nothing further, you may say, Mr. Clerk, under the sec-

ond count the sentence of the Court is that Donald Lee Layer is to be incarcerated in the custody of the Commissioner of Corrections for a period of 10 years . . . [4]

Judge Truitt apparently first recalled his prior contacts with Layer during the sentencing process. Neither plaintiff nor his counsel raised, during the sentencing proceeding, any question or made any objection to Judge Truitt's continued participation in the case. On the other hand, the judge did not ask whether the defendant desired him to recuse himself or allude to any possibility that he might recuse himself as the judge. In addition, the record does not disclose whether plaintiff had any recollection of his prior contact with Judge Truitt before Judge Truitt recognized plaintiff and, if so, whether plaintiff first so recalled before, during or after trial. Additionally, the record does not reveal whether plaintiff informed his trial counsel of what he remembered in that regard before Judge Truitt's above-quoted statement on the record and, if so, when plaintiff so informed his counsel.

In any event, plaintiff first complained in any court proceeding concerning Judge Truitt's participation in the case during plaintiff's appeal from his conviction in Judge Truitt's court. The Court of Special Appeals of Maryland, in the course of affirming plaintiff's conviction in a per curiam opinion, rejected all of plaintiff's contentions. Subsequently, plaintiff's petition for certiorari review by the Court of Appeals of Maryland was denied. Plaintiff thereafter unsuccessfully sought habeas corpus relief in the Circuit Court for Wicomico County, Maryland. Plaintiff at no time sought relief under Maryland's Post Conviction Procedure Act.[5] However, since plaintiff did raise the issue of Judge Truitt's prior prosecution and representation of him on direct appeal, plaintiff did not need again to do so in a Post Conviction Procedure Act proceeding. If plaintiff had not raised the issue on direct appeal, he

---

**4.** Trial Transcript at 93–94.

**5.** Md.Ann.Code art. 27, § 645A.

would be required to utilize the Maryland post-conviction route before this court could reach the merits of the issue herein since plaintiff's use of Maryland's habeas corpus procedure did not, without use of the Post Conviction Procedure Act, exhaust plaintiff's state remedies. *Jenkins v. Fitzberger,* 440 F.2d 1188, 1189 n. 1 (4th Cir. 1971); *see Hunt v. Warden,* 335 F.2d 936, 943 (4th Cir.1964).

The core of plaintiff's position is that when Judge Truitt noted his recognition of plaintiff before sentencing him, Judge Truitt, without more, should have disqualified himself. To begin with, plaintiff asserts a denial of his due process right to an impartial judge at all phases of trial, including sentencing. Plaintiff contends that, even in the absence of any actual bias, prejudice or hostility on the part of Judge Truitt, and no such bias, prejudice or hostility has been shown or even indicated,[6] there is sufficient risk of the same, under the circumstances, to entitle plaintiff, as a matter of due process, to be resentenced by another state court judge. *See,* as to that form of relief in slightly different contexts, *Hollis v. United States,* 687 F.2d 257, 259 (8th Cir.1982), *cert. denied,* 459 U.S. 1221, 103 S.Ct. 1228, 75 L.Ed.2d 462 (1983), *on remand,* 718 F.2d 277 (8th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984); *Willeford v. Estelle,* 637 F.2d 271, 272 (5th Cir.1981).

■ Due process requires that a criminal defendant be tried "by an unbiased and impartial judge without a direct personal interest in the outcome of the hearing." *Ungar v. Sarafite,* 376 U.S. 575, 584, 84 S.Ct. 841, 846, 11 L.Ed.2d 921 (1964) (White J.).

Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered.

*In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) (Black, J.).

In *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), the Supreme Court reversed liquor law convictions handed down by the mayor of a town acting and sitting as a judge. In *Tumey,* the mayor received in his personal capacity a portion of the fees and costs assessed by him against convicted violators. "But no fees or costs in such cases are paid him [the mayor] except by the defendant if convicted. There is, therefore, no way by which the mayor may be paid for his service as judge, if he does not convict those who are brought before him ...." *Id.* at 520, 47 S.Ct. at 440. On behalf of a unanimous Court, Chief Justice Taft wrote:

[I]t certainly violates the 14th Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case.

*Id.* at 523, 47 S.Ct. at 441.

In *Ward v. Village of Monroeville,* 409 U.S. 57, 60, 93 S.Ct. 80, 83, 34 L.Ed.2d 267 (1972), the Supreme Court reversed a defendant's conviction for traffic infractions in a case in which the mayor-judge had responsibility for revenue production and where traffic fines constituted a major source of such revenues. Justice Brennan, writing for a 7–2 majority, stated: "Although 'the mere union of the executive power and the judicial power in him [the mayor-judge] can not be said to violate due process of law.' ... the test is whether

---

6. During the pendency of the within case, Judge Truitt filed an affidavit in this case stating that he had on May 4, 1984 "no personal recollection of Donald Lee Layer or of any trial or sentencing concerning Donald Lee Layer. However, as is my practice, had there been any belief that I could not have sentenced Layer in a fair and impartial manner, I would have recused myself." (Docket 21, Exh. 1).

the mayor's situation is one 'which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused ....'" *Id.* at 60, 93 S.Ct. at 83, *quoting from Tumey v. Ohio, supra* at 532–34, 47 S.Ct. at 444.

In *In re Murchison, supra* at 136, 75 S.Ct. at 625, Justice Black concluded that the due process requirement of an impartial tribunal was violated where a Michigan state judge had "conducted the secret 'one-man grand jury' proceedings" (footnote omitted), and later convicted two witnesses of contempt for the same events which had taken place before him in his "grand jury" capacity. Noting that "[a]s a practical matter it is difficult if not impossible for a judge to free himself from the influence of what took place in his 'grand-jury' secret session," *id.* at 138, 75 S.Ct. at 626, Justice Black required that the contempt charges be tried before a different judge. In *Ungar v. Sarafite, supra,* the Supreme Court held that a New York state trial judge was not constitutionally disqualified from presiding over contempt proceedings by virtue of the judge having sat during the original trial. Justice White, in distinguishing earlier decisions of the Supreme Court, wrote that "this record does not leave us with an abiding impression that the trial judge permitted himself to become personally embroiled with petitioner," *id.* at 585, 84 S.Ct. at 847, and noted that the judge's "characterization of the petitioner's conduct as contemptuous, disorderly, and malingering was at most a declaration of a charge against the petitioner, based on the judge's observations, which, without more, was not a constitutionally disqualifying prejudgment of guilt ...." *Id.* at 586–87, 84 S.Ct. at 848–49. Justice White concluded: "In these circumstances, we cannot say there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicat-

ing the interests of the court and the interests of the accused." *Id.* at 588, 84 S.Ct. at 849.

In *Howell v. Jones,* 516 F.2d 53, 57 (5th Cir.1975), *cert. denied,* 424 U.S. 916, 96 S.Ct. 1116, 47 L.Ed.2d 321 (1976), plaintiff complained "that because of ex parte communications between the judge who originally cited him for contempt and the judge who eventually tried him on [that] charge, he was denied a trial by an impartial tribunal." In finding "no error which rises to the ... level required for habeas corpus relief," Judge Roney wrote:

These communications [the ones between the two judges] ... involved trial procedure and there is no evidence that they had any effect on the trial judge's determination of the merits of the case. The legal determination that Howell's conduct was contemptuous appears only to have been made from information learned at the hearing. [citation omitted]

The leading cases cited by Howell, *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), are different from the case *sub judice.* They involved situations where there was actually some incentive to find one way or the other, *i.e.,* financial considerations (*Ward & Tumey*) or previous participation by the trying judge in the proceedings at which the contempt occurred (*Murchison*). In this case, no such incentive is evident, and the record does not otherwise support Howell's contention that he was denied a trial by an impartial tribunal.

*Id.* at 57–58.[7]

In *Margoles v. Johns,* 660 F.2d 291, 295–97 (7th Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982), the Seventh Circuit, in a per curiam opin-

---

**7.** *See also,* to the same general effect, *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.,* 690 F.2d 1157, 1165–1166 (5th Cir.1982), *cert. de-*

*nied,* — U.S. —, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *In re Virginia Electric and Power Company,* 539 F.2d 357, 369 (4th Cir.1976).

ion, adopted the district court's opinion. In the latter, Judge Evans wrote that the collateral challenge "raised by plaintiff requires that he demonstrate not that there is room to question whether Judge Warren should have recused himself but, rather, that Judge Warren *in fact* was so biased or prejudiced against plaintiff that the proceeding was unfair." *Id.* at 295 (emphasis in original). In *Margoles*, the plaintiff collaterally challenged a civil judgment entered by Judge Warren in the Eastern District of Wisconsin pursuant to Federal Civil Rule 60(b), alleging that Judge Warren was biased because, prior to his appointment to the bench, he had served as Attorney General during a period when plaintiff's fitness to practice medicine was investigated. Rejecting that challenge, Judge Evans stated:

While I agree with the principle stated in plaintiff's brief that "due process requires that 'a neutral and detached judge' preside over judicial proceedings", the basic contention which appears to permeate the plaintiff's entire argument is that the judgment is voidable upon a showing of the "appearance" of partiality or upon facts which might cause a "reasonable man" to question Judge Warren's impartiality. While such a presentation, if actually supported by the record, might cause a judge to recuse himself under 28 U.S.C. § 455, or justify reversal on appeal of a refusal to, it would not mandate a finding that a judgment, on a collateral attack such as this, should be declared void.

A litigant is denied the fundamental fairness to which he is constitutionally entitled if the judge of his case is unfairly biased against him. However, a litigant is not denied due process by either the "appearance" of partiality or by circumstances which might lead one to speculate as to a judge's impartiality. A litigant is denied due process if he is *in fact* treated unfairly.

*Id.* at 296 (emphasis in original).

In *Jenkins v. Bordenkircher*, 611 F.2d 162, 166–67 (6th Cir.1979), *cert. denied*, 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 798 (1980), plaintiff, a state prisoner, filed a federal habeas corpus petition alleging that the state judge, prior to going on the bench, had prosecuted plaintiff on five different occasions in connection with matters unrelated to the conviction plaintiff was challenging. Rejecting plaintiff's due process challenge, Judge Lively wrote:

We have found no habeas corpus case which holds that it is a denial of due process for a judge to preside over a jury trial in a criminal case where the judge, as a prosecutor, had previously been involved in proceedings against the defendant in entirely unrelated cases. Though this circuit does not appear to have considered the question, the Fifth Circuit has denied habeas corpus in at least two cases where it was contended that a constitutional violation occurred because a judge who had been involved previously in the prosecution of a defendant for unrelated matters presided at that defendant's subsequent trial.

*Id.* at 166 (citations omitted). Judge Lively noted that all of the state judge's prior contacts with plaintiff "occurred between five and thirteen years before the trial of the present case." *Id.* at 166. In the case at bar, Judge Truitt's two prior contacts with plaintiff took place five to fourteen years before he presided and sentenced in the proceedings in issue herein. However, in this case, the latter of those two contacts was as defense attorney for plaintiff herein, not as prosecutor.

In *Jenkins*, Judge Lively concluded:

Absent some showing of hostility or prejudgment we will not assume that a state court judge would not be able to give a defendant a fair trial solely because of his earlier contacts with the defendant in prosecuting totally unrelated charges.

*Id.* at 166. Judge Lively also wrote:

This Court is unwilling to adopt a *per se* rule that a judge may never preside at a trial where he has had previous contact with the defendant as a prosecutor in totally unrelated criminal charges.

*Id.* at 167.

In *Jenkins*, Judge Lively found an absence of "hostility, bias or prejudgment." *Id.* at 166.

In *Barry v. United States*, 528 F.2d 1094, 1099 (7th Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976), Judge Adams, sitting by designation, affirmed Judge McGarr's denial of plaintiff's petition under 28 U.S.C. § 2255 and concluded that Judge Bauer, the trial judge, was not subject to mandatory disqualification under the federal disqualification statute, 28 U.S.C. § 455, in a case in which informal investigation had begun during Judge Bauer's tenure as a United States Attorney before he became a United States District Judge. "[T]he investigation had formally commenced ... several months after Judge Bauer had left the office of the U.S. Attorney." *Id.* at 1096. "Nor did Judge Bauer's decision to preside at the trial lead to a constitutional violation.... The conflicts of interest present in [the Supreme Court's decisions] in which the [due process] standard was enunciated were ... much more extreme than the lack of impartiality suggested here.... [T]he considerations present in a collateral attack on a conviction, such as that here, may differ from those in a direct appeal." *Id.* at 1099–1100 & n. 21.

In *Murphy v. Beto*, 416 F.2d 98 (5th Cir.1969), the Fifth Circuit, in a per curiam opinion, denied habeas corpus relief sought by petitioner, *inter alia*, because the state trial judge had previously prosecuted the convicted defendant for a prior crime. In *Murphy*, in which the habeas corpus petitioner was convicted in a Texas court of "felony theft as a recidivist," *id.* at 99, Judge Ingraham, in the district court, wrote that "petitioner's ... contention, that the trial judge was district attorney at the time of one of his convictions alleged for enhancement, is not a sufficient ground for disqualification and does not present a question cognizable in habeas corpus." *Id.* at 100. See also *United States v. Maroney,* 280 F.Supp. 277, 279 (W.D.Pa.1968); *Moultrie v. State,* 584 S.W.2d 217, 219 (Tenn.Ct. of Crim. Appeals 1978).

In *Mendenhall v. Hopper*, 453 F.Supp. 977, 983 (S.D.Ga.1978), *aff'd without published opinion,* 591 F.2d 1342 (5th Cir. 1979), the petitioner, who had pled guilty to two counts of murder in the first degree and one count of aggravated assault in a Georgia court, sought federal habeas corpus relief. The state court trial judge who sentenced Mendenhall had "while in private practice, conferred with Mr. Mendenhall and his wife concerning the possibility of handling the defense", *id.* at 979 n. 1, in the very case in which the trial judge later presided, but had not entered into an attorney-client relationship with the plaintiff. Indeed, the attorney (later the trial judge) "made no inquiry as to the facts surrounding the charges but inquired only as to Mendenhall's financial status ... [and] declined to take the case ... [telling] Mrs. Mendenhall that her husband 'was a sick man and needed treatment.'" *Id.* at 979. Mendenhall was represented in the trial court by another attorney who moved for and obtained psychiatric examination of Mendenhall prior to sentencing. During the state court habeas corpus proceeding, the prosecutor, who had handled the arraignment and the sentencing in the trial court, testified that he listened to "a conversation between Judge Henley and [Mendenhall's trial counsel] in which Judge Henley said he 'wouldn't have touched the case for less than $15,000.00.'" *Id.* at 980–81.

In the federal habeas corpus proceeding, Mendenhall sought relief on a number of grounds including, *inter alia*, the lack of voluntariness of his plea, lack of effective assistance of trial counsel, and "failure of the Superior Court judge who accepted the plea and imposed punishment to disqualify himself ...." The last said attack was premised upon a claim of violation of plaintiff's "right of due process". *Id.* at 979.

In the § 2254 case instituted by Mendenhall, Judge Lawrence granted the writ, holding petitioner's guilty plea "was not entered voluntarily, knowingly, and intelligently", *id.* at 983, and that "due process and adequate representation ... were lacking ...." *Id.* at 987. The lack of due process pertained to the failure of the state trial court to conform to "federal constitutional standards" during the arraignment. Accordingly, Judge Lawrence's observa-

tions with regard to Mendenhall's other contentions would appear to be dicta. Nevertheless, Judge Lawrence's statements concerning the recusal issue are instructive:

> The failure of a sentencing judge to disqualify himself *sua sponte* may not, without more, reach federal constitutional dimension requiring habeas relief under 28 U.S.C. § 2254. I have found no case that clearly holds that failure to recuse is a ground for such relief. In a number of decisions federal courts have found that there was no basis in fact for the state judge to disqualify himself and thereby have avoided the question of the right to habeas relief in the event the grounds for recusal were valid.... These cases implicitly support the view that failure by a judge to disqualify himself which serves to deprive the defendant of an unbiased trier of fact is a denial of due process....

*Id.* at 983–84. Judge Lawrence added that Judge Henley's "good faith ... is not questioned ...." *Id.* at 984.

 The case law rather clearly teaches that in the absence, as in this case, of any bias, prejudice or hostility on the part of the trial judge, disqualification is not required as a matter of due process simply because the trial judge has had prior contacts with a defendant as prosecutor in an unrelated criminal case. The case law, however, as Judge Lawrence suggested (*Mendenhall* at 983), provides little or no instruction when the state judge, handling jury trial and sentencing, has acted as defense counsel in a prior unrelated criminal case.[8] Judge Adams in *Barry, supra* at 1150 n. 21, highlights the need to keep always in mind that habeas corpus relief is collateral in nature and may only be grant-

ed when federal constitutional rights have been violated. In that context, constitutional due process requirements would not appear to be violated by the participation of a state trial judge in sentencing a defendant in a criminal case unrelated to the prior case in which the judge, before going on the bench, acted as counsel for the defendant, in the total absence of any bias, prejudice or hostility on the part of the trial judge. That is so even though this court, in a non-constitutional context, shares Judge Lawrence's concern about the appearance of impropriety.[9]

There remains herein the Sixth Amendment challenge which Layer has stated.[10] There are several possible bases for concern in the context of the Sixth Amendment. For one thing, if a defendant in any criminal case knows that he may some day in the future, in another criminal case, be sentenced by his present attorney, that knowledge may have a chilling effect on his willingness to communicate fully with his attorney. Further, there is the problem caused by the fact that the information which the trial judge has gained as an attorney in the prior case may in fact be considered by him as a judge in sentencing the defendant in the later case.

In *Campbell v. State of Arkansas*, 281 Ark. 13, 660 S.W.2d 926 (Ark.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1424, 79 L.Ed.2d 748 (1984), the petitioner, seeking collateral post-conviction relief, had been sentenced to twenty years, with five years suspended, for four prior felony convictions. The majority decision of the Supreme Court of Arkansas in Campbell's appeal, from denial below of her quest for post-conviction relief, noted that the trial judge "knew of her extensive criminal background" (at 927), having "previously

---

**8.** Nor has a search in the American Bar Association's records of bar association or related rulings shed any particular additional light on the subject. In addition, *see generally* Annotation: Prior representation or activity as attorney or counsel as disqualifying judge, 72 A.L.R.2d 443 *et seq.*

**9.** That concern, however, may need to be balanced in some cases by practical considerations as, for example, when a judge, who has practiced in the past as a defense attorney in crimi-

nal cases in a sparsely populated area, has represented many of the repeat offenders who appear in his court, and there is no other available judge sitting within the same geographical area.

**10.** The constitutional importance of the right to counsel is stressed by such cases as *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) and *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

represented Campbell in some criminal matters. He recognized her just as the hearing began and offered to disqualify" himself. *Id.* at 928. The majority opinion sets forth the following excerpt from the sentencing proceedings:

THE COURT:

Mr. Simpson, [Defense Counsel] I didn't recognize Ms. Campbell until she walked up here. I used to represent Ms. Campbell. Do you have any objections to me entering this plea? Is it a plea?

DEFENSE ATTORNEY:

She is going to throw herself on the mercy of the Court. It's not a negotiated plea, although there are some circumstances that she would like to make the court aware of.

THE COURT:

Okay. Ms. Campbell, I have represented you for some time and your husband, Freddie, and have some knowledge about you and your prior involvement with the law. Would you rather somebody else hear this?

DEFENDANT CAMPBELL:

No.

THE COURT:

Gentlemen, I really feel uncomfortable about it, because I am aware of Ms. Campbell's extensive involvement with the law. I will—if you would like, I will go ahead and do what I think the system requires and try to be as honest with Louise as I can under the system; or, I will do one or the other: I will take her guilty plea and satisfy myself with this plea and transfer her to the Fifth Division for sentencing or *I'll transfer the whole thing.* Talk to her Mr. Simpson, and see what she wants to do. [Emphasis added.]

DEFENSE ATTORNEY.

I discussed this with her the other day and she indicated she had no objection to me.

THE COURT:

Well, do you want me to go ahead?

DEFENSE ATTORNEY:

She had no objection to you hearing it. What he's saying is, if you want to transfer to another judge, he will do that.

DEFENDANT CAMPBELL:

No, that's okay.

*Id.* at 928.

After so quoting from the sentencing transcript, Justice Hickman wrote for the majority as follows:

Campbell explicitly said she did not want Judge Lofton to recuse. Counsel for Campbell said he and Campbell had talked about this very question a day or so before and Campbell did not object to Judge Lofton hearing the case. Even if Judge Lofton should have been disqualified, Campbell was completely aware of her rights and the circumstances and chose to proceed in his court.

*Id.* at 928.

Justice Purtle, in single dissent, stated:

The present controversy presents a classic case where a trial judge should have refused to hear the plea or to sentence the defendant because of the appearance of impropriety. Even though the appellant and her attorney both expressly agreed that the trial judge should not disqualify, it would have been better for him not to pass sentence on his former client. Appellant and her attorney both thought he would be at least as lenient as the plea bargain offer. They were sadly mistaken. It is not enough that a trial judge be fair and impartial; he must also appear to be such. [citation omitted]. The trial court should have voluntarily disqualified without request by the parties. [citation omitted].

The court stated at the hearing:

Gentlemen, I really feel uncomfortable about it because I am aware of Ms. Campbell's extensive involvement with the law ... I will go head and do what I think the system requires and try to be as honest with Louise as I can under the system ... I will take her guilty plea and satisfy myself with this plea and transfer her to the Fifth Division ... or I'll transfer the whole thing.

At sentencing, the trial court said:

Ms. Campbell, it would not have made any difference whether you had ac-

cepted the state's recommendation or not. The court would not have. So it's academic. If you had accepted it last week, I would not have.

Ms. Campbell, you are a thief. The court has known you for a long time and we're tired of you stealing from us. So, we're going to put you away so we won't have to worry about you for a while.

It is hard to keep from wondering how much information about appellant the trial judge obtained as her lawyer and how much of this went into the sentence. Only the present crime and prior convictions would have been before another judge. If the court's relationship with the appellant was unpleasant the sentence may have been different than if the relationship had been a pleasant one. For appearance only, I think the court erred. I would remand for resentencing before another court.[11]

*Id.* at 929-30.

 In the within case, Judge Truitt's representation of plaintiff in 1975 on escape charges occurred more than five years before his sentencing of plaintiff in 1980. The record reveals no reason to believe that Judge Truitt recalled any details about Layer's past or what, if anything, Layer revealed to Judge Truitt in 1975 and, if Layer revealed anything, whether or not it was confidential information. Moreover, Layer himself has not alleged herein that Judge Truitt actually relied upon any confidential or other information which Judge Truitt learned from Layer when he (Judge Truitt) acted in 1975 as Layer's defense attorney. The mere possibility of the existence of the kind of problem which forms the basis of the dissenting opinion in *Campbell* does not rise to the level of a Sixth Amendment violation. In *United States v. Morrison*, 449 U.S. 361, 366, 101 S.Ct. 665, 669, 66 L.Ed.2d 564 (1981), Justice White wrote that "demonstrable prejudice, or a substantial threat thereof," must

be shown before a Sixth Amendment deprivation will warrant dismissal of an indictment, stating, although in a context quite different than the one involved in this case:

Here, [defendant] has demonstrated no prejudice of any kind, either transitory or permanent, to the ability of her counsel to provide adequate representation in these criminal proceedings. There is no effect of a constitutional dimension which needs to be purged to make certain that [defendant] has been effectively represented and not unfairly convicted.

*Id.* at 366, 101 S.Ct. at 669. While the right of a defendant to a confidential relationship with his attorney, both at the time of the representation and thereafter, would appear to be guaranteed by the Sixth Amendment, *see Martin v. Lauer*, 686 F.2d 24, 32 n. 36 (D.C.Cir.1982), the mere possibility of a violation of that right—which is all that exists here—does not provide a basis for federal habeas corpus relief. An order denying such relief will accordingly be entered.

---

**11.** Other case law, while somewhat helpful, is not too instructive. *See Matter of Wireman*, 270 Ind. 344, 367 N.E.2d 1368, 1373 *et seq., cert.* *denied*, 436 U.S. 904, 98 S.Ct. 2234, 56 L.Ed.2d 402 (1978).